Joel D. Zelkowitz, Esq.
Atty ID No. 083012014
USCHER, QUIAT, USCHER & RUSSO
A Professional Corporation
433 Hackensack Avenue, 2nd Floor
Hackensack, NJ 07601
Phone201-342-7100
Fax201-342-1810
***Attorneys for Plaintiff, Michael Kerrigan***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL KERRIGAN, | Civil Action No. _____ |
| Plaintiff, | |
| vs. | ECF CASE |
| UNUM LIFE INSURANCE COMPANY OF AMERICA, | COMPLAINT |
| Defendant. | |

Plaintiff, MICHAEL KERRIGAN, by way of Complaint against the Defendant, UNUM LIFE INSURANCE COMPANY OF AMERICA (hereinafter "Unum" or "Defendant'), by and through his attorneys, Uscher, Quiat, Uscher & Russo P.C., alleges as follows:

1. Plaintiff is a resident of the State of New Jersey, County of Bergen, with a primary residence located in Franklin Lakes, New Jersey.

2. Defendant, Unum, is a disability insurance carrier licensed to do business in the State of New Jersey with a principal place of business in Chattanooga, Tennessee.

3. Jurisdiction and venue are proper in this Court pursuant to 29 USC § 1001 *et seq.* and 28 USC § 1331 *et seq.* and 28 USC § 1391 *et seq.*

## ESSENTIAL FACTS

4. Plaintiff, Michael Kerrigan (hereinafter referred to as "Mr. Kerrigan" or "Plaintiff"), is a 60-year-old man who lives in Franklin Lakes, NJ. From 1982 until the time of his disability, Mr. Kerrigan was employed as a federal funds broker (and later as Vice President) at TP-ICAP, a global firm of professional intermediaries that operates in the world's financial, energy and commodities markets.

5. As a federal funds broker, it was Mr. Kerrigan's responsibility to broker numerous federal funds, or large-scale bank loans, on a daily basis. Mr. Kerrigan was required to have very strong interpersonal and salesmanship skills, as well as equally strong analytical skills in order to predict market trends, Federal Reserve actions, and future interest rates.

6. While employed by TP-ICAP, Mr. Kerrigan was a beneficiary under TP-ICAP's Long Term Disability (LTD) plan Group Policy No. 405066 (hereinafter referred to as the "Policy") underwritten by Unum. (Policy is attached hereto as **Exhibit A**).

7. Under the Policy, Mr. Kerrigan is deemed disabled if, due to injury or sickness, he is unable to perform the material and substantial duties of his "regular occupation" as Vice President / federal funds broker (**Exhibit A**).

## PLAINTIFF'S DISABILITY

8. On the morning of September 17, 2018, Mr. Kerrigan was working his first day in TP-ICAP's new Manhattan office when he accidentally walked directly into a closed clear glass door, slamming head first into the glass.

9. The direct impact of the hit was to Mr. Kerrigan's forehead, right above and between his eyes. His entire body bounced back approximately 3 feet on impact and left Mr. Kerrigan feeling very dazed.

10. Immediately following the accident, Mr. Kerrigan experienced a severe headache localized in the center of his forehead.

11. This headache persisted without relief for the next six weeks and manifested as an unrelenting, sharp pounding sensation in his forehead.

12. Notwithstanding his chronic, severe headaches, Mr. Kerrigan continued to report to work over the six weeks following the accident, as he was reluctant to take time off for fear of losing the job he had worked so hard to achieve. Nonetheless, he experienced a significant loss of productivity over these six weeks, unable to broker as many deals as he regularly brokered. He was in constant pain and was unable to focus or concentrate as he had been accustomed to doing throughout his career. As a result, he fell increasingly behind on his usual workload.

13. Mr. Kerrigan also felt tired all the time, as his unrelenting pain prevented him from getting a restful night's sleep. Notwithstanding his best efforts and his fear of losing his position, Mr. Kerrigan was compelled to take approximately 5 or 6 sick days during this six-week period, more sick days than he had used in all his years at TP-ICAP prior to this accident.

14. On November 20, 2018, Mr. Kerrigan was evaluated by neurologist Dr. Susan Molinari and diagnosed with post-concussion syndrome. Dr. Molinari described Mr. Kerrigan's symptoms as headache, fatigue, tinnitus and vertigo and advised Mr. Kerrigan to cease working.

15. On November 25, 2018, Mr. Kerrigan underwent an MRI of his brain which revealed mild volume loss, a common result of traumatic brain injury.

16. Since the time of his disabling injury, Mr. Kerrigan has experienced a constant debilitating headache, cognitive impairments including an inability to focus or concentrate, frequent dizziness, tinnitus, and debilitating fatigue. As a result of these disabling symptoms, Mr.

Kerrigan is unable to return to his prior occupation as a Vice President / federal funds broker at TP-ICAP.

## PLAINTIFF'S CLAIM FOR DISABILITY BENEFITS

17. On November 30, 2018, Mr. Kerrigan worked his last day at TP-ICAP and informed the Human Resources Department that he would be taking a leave of absence due to his health problems, in accordance with the advice of Dr. Molinari.

18. Mr. Kerrigan filed a claim for Long Term Disability benefits under the terms of the Policy in early March 2019. This claim was supported by Dr. Molinari, who restricted Mr. Kerrigan from working at a computer for longer than 15 minutes at a time, a fundamental requirement of Mr. Kerrigan's occupation.

## DEFENDANT'S DENIAL OF PLAINTIFF'S DISABILITY CLAIM FOR BENEFITS

19. On June 20, 2019, Unum sent Mr. Kerrigan a letter advising him that his claim for LTD benefits had been denied. In this letter, Unum asserted that the medical information on file did not support Mr. Kerrigan's inability to perform his own occupation as a federal funds broker. As such, Unum asserted that Mr. Kerrigan was not disabled under the terms of the Policy and denied his claim for LTD benefits.

## PLAINTIFF HAS EXHAUSTED ADMINISTRATIVE REMEDIES

20. Mr. Kerrigan submitted a timely administrative appeal to Unum dated December 18, 2019. Mr. Kerrigan's appeal included new medical evidence, including a neuropsychological evaluation report from Dr. Kenneth Freundlich, and a further report in support of his disability claim from Dr. Molinari.

21. Dr. Freundlich conducted a neuropsychological evaluation of Mr. Kerrigan on November 25, 2019. In the report generated following his evaluation, Dr. Freundlich concluded

that as a result of post-concussion syndrome, Mr. Kerrigan exhibited compromised attention and memory, as well as a decline in his overall premorbid intellectual capacity that prevented him from working as a federal funds broker / Vice President.

22. Notwithstanding the objective results demonstrated in the neuropsychological evaluation and Dr. Molinari's continued support of his disability claim, Unum rejected Mr. Kerrigan's appeal and affirmed its decision to deny his claim for LTD benefits in a letter dated February 28, 2020. Unum continued to assert that Mr. Kerrigan was capable of working in his regular occupation and therefore was not disabled under the terms of the Policy.

23. Defendant's denial of Plaintiff's LTD benefits is wrongful, without basis in law or fact, and is arbitrary and capricious. Despite evidence from Plaintiff's treatment providers as well as a neuropsychologist which corroborate Plaintiff's physical/cognitive impairments and how they preclude him from being employed in his regular occupation, Defendant has refused to acknowledge that Plaintiff is disabled under the terms of the Policy. Defendant's failure to meaningfully consider the Plaintiff's medical evidence is a clear indication that Defendant was serving its own financial interests, despite its fiduciary obligations, in denying Plaintiff's claim.

24. Defendant also failed to provide a full and fair review to Plaintiff during his administrative appeal and failed to give due consideration to the significant medical evidence provided by the Plaintiff. Defendant never requested that Plaintiff attend an Independent Medical Evaluation despite language in the Policy which clearly allowed for such an examination to occur.

25. The evidentiary support for the Defendant's termination of disability benefits is both inconsistent and self-serving. It does not meet the "substantial evidence" requirement of the Courts in ERISA litigation. *Miller v. Am. Airlines, Inc.*, 632 F.3d 837 (3d Cir. 2011).

26. Plaintiff has exhausted his administrative remedies.

## AS AND FOR A FIRST CAUSE OF ACTION

27. Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs 1 through 26 as if fully set forth again herein.

28. The Plaintiff is disabled within the meaning of the terms of the Policy and as such is entitled to the disability benefits provided thereunder.

29. Defendant's denial of Plaintiff's claim and subsequent administrative appeal was arbitrary and capricious and was not based on substantial evidence. Furthermore, it deprived the Plaintiff of his right to a "full and fair review."

30. Moreover, Defendant is acting under a clear conflict of interest within the meaning of *Metropolitan Life Insurance Company v. Glenn*, 128 S. 2343 (2008) which conflict has poisoned its decision-making in this case, to Plaintiff's great prejudice.

31. By virtue of the foregoing, the Defendant has breached the terms of the subject Policy and has violated the requirements of the Employee Retirement Income Security Act, 29 USC §1132 (a)(1)(B), §502(a)(1)(B) and applicable regulations promulgated thereunder.

## AS AND FOR A SECOND CAUSE OF ACTION
## (IN THE ALTERNATIVE)

32. Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs 1 through 31, as if fully set forth again herein.

33. By virtue of the foregoing, the Defendant's actions constitute a breach of Defendant's fiduciary duty owed to the Plaintiff under §502(a)(3) and 29 USC §1132(a)(3). Placing its own interests over that of the Plaintiff, Defendant has failed to justly and equitably administer this claim, causing Plaintiff compensable equitable damages distinct, separate and apart from his right to benefits under the said Policy.

34. Among the fiduciary duties breached by Defendant are (i) failing to properly investigate Plaintiff's claim before denial of benefits, (ii) disregarding the opinion of Plaintiff's treating physician; (iii) failing to request that Plaintiff attend an Independent Medical Evaluation despite the Policy allowing for such an examination to occur, and (iv) disregarding the significant medical evidence presented in the administrative appeal.

WHEREFORE, Plaintiff demands that this Court enter judgment against the Defendant as follows:

(a) Declaring Plaintiff disabled within the meaning of TP-ICAP's Long Term Disability Plan, Policy No. 405066.

(b) Ordering the Defendant to pay Plaintiff all LTD benefits to which he is entitled;

(c) Awarding to Plaintiff his costs of suit, including reasonable attorneys' fees;

(d) Awarding to Plaintiff interest on all unpaid benefits and waiving any and all premium charges accruing with respect to said Policy of insurance; and

(e) Granting such other and further relief as this Court may deem just and equitable.

USCHER, QUIAT, USCHER & RUSSO
A Professional Corporation
433 Hackensack Avenue, 2nd Floor
Hackensack, NJ 07601
Phone 201-342-7100
Fax    201-342-1810

Dated: April 28, 2020     By:     /s/ Joel D. Zelkowitz
                                  JOEL D. ZELKOWITZ
                                  Atty ID No. 083012014
                                  ***Attorneys for Plaintiff, Michael Kerrigan***